IN THE SUPREME COURT OF NORTH CAROLINA

No. 188A20

Filed 11 December 2020

IN THE MATTER OF: C.A.H.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from orders entered on 2 January 2020 by Judge Christine Underwood in District Court, Alexander County. This matter was calendared in the Supreme Court on 23 November 2020 but determined on the records and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*No brief for petitioner-appellee mother.*

*Sydney Batch for respondent-appellant father.*

MORGAN, Justice.

Respondent-father, the biological father of C.A.H. (Charlie)[1], appeals from the trial court's orders terminating respondent-father's parental rights on the grounds of willful failure to pay for the cost of care of the child and willful abandonment. We affirm the trial court's decision to terminate respondent-father's parental rights.

---

[1] Pseudonyms are used in this opinion to protect the juvenile's identity and for ease of reading.

*Factual Background and Procedural History*

Charlie was born in September 2014. Petitioner-mother and respondent-father were in a relationship at the time of her birth, but the parents never married. After Charlie was born, petitioner and respondent briefly resided together at the maternal grandfather's home until their separation sometime around December 2014. During the time that Charlie's parents lived together, respondent assisted petitioner with the care of Charlie and with the purchase of necessities for their child.

On 18 March 2016, petitioner obtained a Domestic Violence Protective Order (DVPO) prohibiting respondent from having contact with petitioner and Charlie for a one-year period. While the DVPO was in effect, the paternal grandmother, while babysitting Charlie, took the juvenile to respondent's house in violation of the order. Petitioner was escorted to respondent's home by law enforcement in order to retrieve Charlie from respondent. This was the last time that respondent saw his daughter.

On 10 September 2016, petitioner married her husband, Mr. I. Mr. I was in the military and was stationed in California at the time of the marriage. Petitioner could not live on the military base with her husband, Mr. I, and her daughter, Charlie, without having full custody of the child. Petitioner filed a child custody action and obtained sole custody of Charlie in an order entered by the trial court on 21 December 2016. Respondent was incarcerated at the time of the hearing and was scheduled to be released in May 2017. The trial court ordered respondent to pay $140.00 per month in child support to begin in June 2017 after respondent's release from imprisonment.

Petitioner subsequently moved to California with Charlie after entry of the custody order.

Respondent was released from incarceration in February 2017. Shortly after his release, he contacted petitioner to request a visit with Charlie. When petitioner gave respondent a California address for the location of the authorized visit, respondent became angry. Respondent did not arrange a trip to California for the scheduled visit and did not tell petitioner that he did not plan to attend it. Petitioner and Charlie waited for two hours for respondent at the restaurant which was the chosen site for the respondent's visit with his daughter in California. When petitioner subsequently communicated with respondent via text message concerning respondent's failure to appear for his planned visit with Charlie, respondent answered that it was not "up to him to come and see [Charlie]. It was up to [petitioner] to bring her to him." Respondent testified at the termination of parental rights hearing that he did not attend the visit in California "because it would cost $1,000.00 to get a ticket to go half way across the world." Respondent's last contact with petitioner regarding Charlie was in February 2017.

Petitioner and Mr. I moved back to North Carolina with Charlie in April 2018. Petitioner did not inform respondent that the three of them had moved back to North Carolina. Respondent did not learn that Charlie had returned to reside in North Carolina until respondent was served with the petition to terminate his parental rights.

On 25 April 2019, petitioner filed a petition to terminate respondent's parental rights, alleging the grounds of willful failure to pay for the care, support, and education of the minor child; willful abandonment; and the earlier involuntary termination of respondent's parental rights with respect to another child. *See* N.C.G.S. § 7B-1111(a)(4), (7), (9) (2019). A hearing on the petition was held on 25 July, 29 August, 27 September, and 6 November of the year 2019. In an order entered 2 January 2020, the trial court found that grounds existed to terminate respondent's parental rights based on respondent's willful failure to pay for Charlie's care and respondent's willful abandonment of Charlie. In a separate disposition order entered on the same day of 2 January 2020, the trial court found that termination of respondent's parental rights to Charlie was in the child's best interests. Accordingly, the trial court terminated respondent's parental rights. Respondent appeals to this Court.

*Analysis*

On appeal, respondent challenges the trial court's conclusions that grounds existed to terminate his parental rights. Respondent first argues that the trial court erred in concluding that grounds existed to terminate his parental rights based on willful abandonment. We disagree.

"We review a trial court's adjudication under N.C.G.S. § 7B-1111 'to determine whether the findings are supported by clear, cogent and convincing evidence and the findings support the conclusions of law.'" *In re E.H.P.*, 372 N.C. 388, 392, 831 S.E.2d

49, 52 (2019) (quoting *In re Montgomery*, 311 N.C. 101, 111, 316 S.E.2d 246, 253 (1984)); *see also* N.C.G.S. § 7B-1109(f) (2019). Unchallenged findings are deemed to be supported by the evidence and are "binding on appeal." *In re Z.L.W.*, 372 N.C. 432, 437, 831 S.E.2d 62, 65 (2019). Additionally, "[a] trial court's finding of fact that is supported by clear, cogent, and convincing evidence is deemed conclusive even if the record contains evidence that would support a contrary finding." *In re B.O.A.*, 372 N.C. 372, 379, 831 S.E.2d 305, 310 (2019) (citing *In re Moore*, 306 N.C. 394, 403, 293 S.E.2d 127, 132 (1982)). "The trial court's conclusions of law are reviewable de novo on appeal." *In re C.B.C.*, 373 N.C. 16, 19, 832 S.E.2d 692, 695 (2019).

The trial court may terminate parental rights when "[t]he parent has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition[.]" N.C.G.S. § 7B-1111(a)(7) (2019). "Abandonment implies conduct on the part of the parent which manifests a willful determination to forego all parental duties and relinquish all parental claims to the child." *In re B.C.B.*, 374 N.C. 32, 35, 839 S.E.2d 748, 752 (2020) (quoting *In re Young*, 346 N.C. 244, 251, 485 S.E.2d 612, 617 (1997)). "[I]f a parent withholds his presence, his love, his care, the opportunity to display filial affection, and wil[l]fully neglects to lend support and maintenance, such parent relinquishes all parental claims and abandons the child." *Pratt v. Bishop*, 257 N.C. 486, 501, 126 S.E.2d 597, 608 (1962). "The willfulness of a parent's actions is a question of fact for the trial court." *In re K.N.K.*, 374 N.C. 50, 53, 839 S.E.2d 735, 738 (2020). "[A]lthough the trial court may consider a parent's

conduct outside the six-month window in evaluating a parent's credibility and intentions, the 'determinative' period for adjudicating willful abandonment is the six consecutive months preceding the filing of the petition." *In re N.D.A.*, 373 N.C. 71, 77, 833 S.E.2d 768, 773 (2019) (quoting *In re D.E.M.*, 257 N.C. App. 618, 619, 810 S.E.2d 375, 378 (2018)).

In the present case, the determinative six-month period for the alleged ground of willful abandonment is 25 October 2018 to 25 April 2019. In support of its conclusion that grounds existed to terminate respondent's parental rights based on willful abandonment, the trial court made the following pertinent findings of fact:

> 9. The minor child [Charlie] was born of a romantic relationship between Petitioner and Respondent. The two were never married. After the minor child was born, the parties lived together for a brief period of time. During that time, Respondent did assist Petitioner with her care and with the purchase of necessaries.
>
> 10. On March 28, 2016 Petitioner obtained a [DVPO] against Respondent, which prevented them from having contact for 12 months. While this [DVPO] was valid, Respondent's mother, while babysitting the minor child, took [Charlie] to Respondent's house in violation of the order. Petitioner required the assistance of law enforcement to enforce the order and obtain the minor child from Respondent's residence in February 2016. This was the last time Respondent was in the presence of the minor child.
>
> 11. Petitioner filed for and obtained sole custody of the minor child in Alexander County File Number 16 CVD 123. Respondent was incarcerated at the time of the entry of the custodial order.

12. Pursuant to this Order, he was required to begin paying child support in the amount of $140.00 each month beginning June 1, 2017. He was entitled to "some regular visitation with the minor child upon his release from custody." His release date was in May 2017. There is a provision in the custody order that provides that either party can notice the matter back on if they cannot agree on a visitation schedule. Respondent has never noticed the custody matter back on for hearing or for a modification.

13. Respondent was in arrears on his child support obligation as of July 31, 2019 in the amount of $3,297.37. His payment history consists of three payments: March 15, 2019 for $114.21; May 3, 2019 for $114.21; and June 7, 2019 for $114.21. As a result of his failure to pay child support, an order to show cause is pending in that action.

14. From June 2017 until April 2019 when this petition was filed, Respondent should have made 23 monthly payments toward his child support obligation. In the 12 months next preceding the filing of this TPR action, the Respondent only made one payment toward his child support obligation. Since its filing, he has made two additional payments. None of these payments was for the full amount of court-ordered support. Aside from these three child support payments, Respondent has provided the minor child with no monetary support, gifts, cards, or other assistance.

15. Petitioner married [Mr. I] on September 10, 2016. She did not join him in California where he was stationed until after she obtained the custody order. Respondent and Petitioner's husband knew one another prior to Petitioner dating her now husband.

16. February 13, 2017 is the last time Respondent contacted Petitioner regarding the minor child. He had been released from custody and requested a visit. Petitioner and the minor child were residing at Camp Pendleton in California. She offered him the opportunity to choose the day and time for the visit. When she sent him

an address in California for the place of visitation, this angered him. It is unclear whether he was aware that the minor child was living in California when he requested the visitation. Nevertheless, he did not arrange a trip to California to visit the minor child and did not make arrangements to visit the minor child in North Carolina. He also did not tell Petitioner that he did not plan to attend the arranged visit. She and the minor child waited at the restaurant for two hours. When Petitioner text[ed] him regarding his failure to show, he responded angrily. He told her it wasn't "up to him to come and see her. It was up to her to bring her to him." When asked during his testimony why he didn't attend the visitation, he stated "because it would cost $1,000.00 to get a ticket to go halfway across the world."

17. The next time Respondent reached out to Petitioner was in September 2017 when his uncle died. He did not ask about [Charlie].

18. Petitioner has maintained the same working telephone number since before the birth of the minor child . . . . Respondent has always had the ability to reach her via this telephone number. Further, the Respondent was aware of her husband's number, having communicated with him via this number in the past, and this number has not changed. She did not give Respondent her physical or mailing addresses in California, and he did not ask her for this information.

19. Petitioner, her husband, and the minor child returned to Alexander County, North Carolina in April 2018. Neither Respondent nor any member of the family has made contact with Petitioner or her husband to inquire about the welfare of the minor child since February 2017. Except for one partial-support payment prior to the filing of the petition, the Respondent has not provided for the support of his biological child. He did not learn that the minor child had returned to North Carolina until he was served with the petition to terminate parental rights.

20. Respondent is employed, but has not sent sufficient money to benefit the minor child as required by the child support order. He has been brought to court on several occasions for failure to pay child support. He does not suffer from any disability. He is able-bodied and capable of working. He has not complied with the court order to pay support for the benefit of his biological child, but he is providing financially for the two children he calls his "step-children." He explains thusly, "They are involved in my life. They aren't being kept from me."

21. Even since the filing of the TPR petition April 25, 2019, Respondent has not communicated with Petitioner to inquire about the welfare of his child or to arrange for visitation with her.

. . . .

23. Grounds exist to terminate the parental rights of Respondent pursuant to N.C.G.S. §7B-1111(a)(7) in that the parent has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition . . . .

On appeal, respondent acknowledges that the trial court correctly found in Finding of Fact 12 that respondent did not file a motion to modify the child custody order despite his knowledge that he could do so. He attempts to explain, however, that his failure to do so was attributable to his limited financial resources and his financial inability to hire an attorney. Since respondent concedes that the record supports this finding, Finding of Fact 12 is "deemed supported by competent evidence and [is] binding on appeal." *In re T.N.H.*, 372 N.C. 403, 407, 831 S.E.2d 54, 58 (2019).

Respondent next challenges Finding of Fact 21, regarding his lack of contact with petitioner since the filing of the termination of parental rights petition, as "not

[being] supported by competent evidence." However, petitioner testified at the termination hearing that respondent did not contact her after the filing of the termination petition. Indeed, respondent acknowledged during his testimony that he did not contact petitioner to ask her about Charlie after the termination petition was filed. Thus, this finding is supported by clear, cogent, and convincing evidence.

Respondent also challenges Finding of Fact 23 that grounds exist to terminate his parental rights pursuant to N.C.G.S. § 7B-1111(a)(7) because the determination is "not supported by competent evidence."[2] However, Finding of Fact 23 is not an evidentiary finding of fact, but instead is an ultimate finding of fact. *In re J.D.C.H.*, 847 S.E.2d 868, 874 (N.C. 2020). "[A]n 'ultimate finding is a conclusion of law or at least a determination of a mixed question of law and fact' and should 'be distinguished from the findings of primary, evidentiary, or circumstantial facts.'" *See In re N.D.A.*, 373 N.C. at 76, 833 S.E.2d at 773 (quoting *Helvering v. Tex-Penn Oil Co.*, 300 U.S. 481, 491, 57 S. Ct. 569, 81 L. Ed. 755, 762 (1937)); *see also In re Anderson*, 151 N.C. App. 94, 97, 564 S.E.2d 599, 602 (2002) ("Ultimate facts are the final resulting effect reached by processes of logical reasoning from the evidentiary facts."). As an ultimate

---

[2] During his argument regarding the ground of willful abandonment in his brief, respondent contends that Findings of Fact 21 and 22 are "not supported by competent evidence." Finding of Fact 22, however, pertains to the other termination ground found by the trial court; namely, respondent's failure to pay for the child's care. Finding of Fact 23 is the trial court's ultimate finding that grounds existed to terminate respondent's parental rights based on willful abandonment. Therefore, respondent's reference to Finding of Fact 22 during his willful abandonment argument is presumed by this Court to be a typographical error, so we address his argument as to Finding of Fact 23.

finding of fact, the trial court's determination that respondent's parental rights were subject to termination based on willful abandonment "must have sufficient support in the trial court's factual findings." *In re N.D.A.*, 373 N.C. at 77, 833 S.E.2d at 773. Accordingly, we address respondent's challenge to Finding of Fact 23 in our discussion below regarding whether the trial court erred by concluding that respondent's parental rights were subject to termination based on willful abandonment. *In re J.D.C.H.*, 847 S.E.2d at 874.

Respondent further asserts that the trial court erred in concluding that grounds existed to terminate his parental rights based on willful abandonment. Respondent acknowledges that he did not have any contact with Charlie in the six months immediately preceding the filing of the termination petition. Respondent argues, however, that his lack of contact was not willful because petitioner did not provide respondent with an address at which to contact Charlie and did not inform him when petitioner moved back to North Carolina with Charlie. We disagree.

First, although the trial court found that petitioner did not provide respondent with a mailing address for petitioner in California, the trial court also found that respondent never asked for this information. The trial court also found that respondent was in possession of petitioner's telephone number, as well as the telephone number for her husband Mr. I. Respondent cannot rely upon petitioner's lack of provision of her address to him to support his claim that his lack of contact was not willful when respondent never made a request for the contact information.

Second, while it is true that petitioner did not inform respondent of her relocation from California when she moved back to North Carolina in April 2018 and that respondent only learned of petitioner's return to North Carolina with Charlie when the termination of parental rights petition was filed a year later, respondent had not had any contact with petitioner or expressed any interest in a relationship with Charlie since February 2017. Moreover, respondent made no attempt to reestablish a relationship with Charlie after he learned that his daughter had returned to reside in North Carolina. Although the statutory determinative period for the ascertainment of willful abandonment is the six months immediately preceding the filing of the petition, as we cited earlier, "the trial court may consider a parent's conduct outside the six-month window in evaluating a parent's credibility and intentions." *In re N.D.A.*, 373 N.C. at 77, 833 S.E.2d at 773. Here, the trial court found that even after the filing of the termination petition, respondent "has not communicated with [p]etitioner to inquire about the welfare of [Charlie] or to arrange for visitation with her." Thus, the trial court could properly take into account respondent's lack of contact with petitioner about Charlie after the filing of the termination of parental rights petition and after respondent's discovery that Charlie was back in North Carolina in evaluating respondent's intentions and in making its eventual determination that respondent's lack of contact was willful.

The trial court's findings of fact establish that respondent made no effort to participate in the juvenile Charlie's life during the six-month statutory determinative

period at issue for the adjudication of the ground of willful abandonment or for the duration of over two years preceding that period. The trial court found that respondent did not send any cards or gifts to his daughter Charlie, did not contact petitioner to inquire into Charlie's welfare, and except for one partial child support payment which was made one month prior to the filing of the termination petition, did not provide for Charlie's care. After learning that petitioner had moved to California with Charlie in February 2017, respondent did not attempt to set up any further visitation, did not move to modify the child custody order in an effort to create a visitation schedule, and did not ask petitioner for her address in order to have any contact with Charlie. The trial court further found that respondent possessed petitioner's telephone number and "has always had the ability to reach [petitioner] via this telephone number." Respondent's last contact with petitioner to inquire about Charlie was in February 2017. These findings of fact by the trial court in the instant case demonstrate that respondent "willfully withheld his love, care, and affection from [Charlie] and that his conduct during the determinative six-month period constituted willful abandonment." *In re C.B.C.*, 373 N.C. at 23, 832 S.E.2d at 697.

In contravention of this conclusion, respondent claims that his actions during the determinative period did not demonstrate his intent to "willfully forego his parental duties or desire to have a relationship with his daughter." He asserts that during the statutory stretch of time he tendered a child support payment, made several attempts to contact petitioner through his friends' social media and

messaging accounts, and met with two attorneys to discuss the child custody order. Respondent argues that the evidence of such actions by him did not demonstrate his intent to abandon Charlie.

However, in reviewing a trial court's adjudication of grounds to terminate parental rights, our examination is limited to "whether the findings are supported by clear, cogent and convincing evidence and the findings support the conclusions of law." *In re C.B.C.*, 373 N.C. at 19, 832 S.E.2d at 695. It is the trial court's "responsibility to 'pass [ ] upon the credibility of the witnesses and the weight to be given their testimony and the reasonable inferences to be drawn therefrom." *In re A.R.A.*, 373 N.C. 190, 196, 835 S.E.2d 417, 422 (2019) (alteration in original). Because "the trial court is uniquely situated to make this credibility determination . . . appellate courts may not reweigh the underlying evidence presented at trial." *In re J.A.M.*, 372 N.C. 1, 11, 822 S.E.2d 693, 700 (2019). Here, the trial court weighed the evidence and eventually determined that respondent's conduct during the determinative period constituted willful abandonment. *See In re K.N.K.*, 374 N.C. at 53, 839 S.E.2d at 738 ("The willfulness of a parent's actions is a question of fact for the trial court.").

In this matter, the trial court's findings of fact support its ultimate finding and conclusion that respondent willfully abandoned Charlie. The findings establish that respondent had no contact with Charlie or petitioner for over two years prior to the filing of the termination petition on 25 April 2019 and that respondent had the ability

*Opinion of the Court*

to make at least a modicum of contact during that time span but made no effort to do so. Respondent's sole payment of some child support for less than the court-ordered amount during the six months immediately preceding the filing of the termination petition does not undermine the trial court's ultimate finding and conclusion that respondent willfully abandoned Charlie. *See In re C.J.H.*, 240 N.C. App. 489, 504, 772 S.E.2d 82, 92 (2015) (affirming termination based on abandonment where the respondent "did not visit the juvenile, failed to pay child support in a timely and consistent manner, and failed to make a good faith effort to maintain or reestablish a relationship with the juvenile," despite making a last minute child support payment). Therefore, we hold that the trial court did not err by concluding that grounds existed to terminate respondent's parental rights due to willful abandonment pursuant to N.C.G.S. § 7B-1111(a)(7).

The trial court's conclusion that a ground for termination of parental rights existed pursuant to N.C.G.S. § 7B-1111(a) is sufficient to support termination of respondent's parental rights. *In re T.N.H.*, 372 N.C. at 413, 831 S.E.2d at 62. As such, we need not address respondent's arguments regarding the ground of willful failure to pay for the cost of Charlie's care as directed in the child custody order. *In re S.E.*, 373 N.C. 360, 367, 838 S.E.2d 328, 333 (2020). Respondent does not challenge the trial court's best interests determination. Consequently, we affirm the trial court's orders terminating respondent's parental rights.

AFFIRMED.